IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| ZULMA PEREZ PEREZ, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| vs. | * | CIVIL NO. 98-2312 (JP) |
| | * | |
| PUERTO RICO PORTS AUTHORITY, | * | |
| et al., | * | |
| | * | |
| Defendants | * | |
| | * | |

## OPINION AND ORDER

### I.  INTRODUCTION

The Court has before it Defendants Puerto Rico Ports Authority, Segismundo Quiñones, Héctor Rivera, and Héctor Sulsona's Motion for Summary Judgment **(docket Nos. 57, 62)** and Plaintiff's opposition thereto (docket No. 67).  Plaintiff Zulma Pérez Pérez ("Pérez") sues Defendants under 42 U.S.C. § 1983, claiming that they retaliated against her in her public employment with the Puerto Rico Ports Authority for engaging in protected speech, in violation of the First and Fourteenth Amendments to the United States Constitution.  In addition, Plaintiff brings pendent Puerto Rico law claims under Article II, Section 4 of the Puerto Rico Constitution and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141.

### II.  UNCONTESTED FACTS

Pérez is an active member of the New Progressive Party.  She commenced working for co-defendant Puerto Rico Ports Authority

CIVIL NO. 98-2312 (JP)                2

("Ports Authority") on June 16, 1982 as a Receptionist at the Luis Muñoz Marín International Airport ("LMM International Airport"). Ports Authority is a public corporation created pursuant to the Laws of Puerto Rico.   Pérez currently occupies the career position of Deputy Chief for Contracts, Real Estate, Insurance and Claims. Previously, she was promoted from her career position to a trust position as Assistant to the Executive Coordinator in Public Relations and Patrons Affairs.   In May 1994, co-Defendant Héctor Sulsona ("Sulsona") appointed Pérez to the position of President of the Bids Board at the Ports Authority.   Pérez continued to perform the duties of Assistant to the Executive Coordinator simultaneously with those of the President of the Bids Board.

In September 1997, the Bids Board awarded a contract for janitorial services at the LMM International Airport to Xpert's, Inc. The maintenance contract was valued at more than $3,500,000.00 per year.   Sulsona was absent when the contract was awarded.   Upon his return, he revoked the Board's decision to award the contract to Xpert's and unilaterally awarded the contract to Mangual's Office Cleaning Service.   Mangual's bid was approximately $275,645.00 lower than Xpert's offer, but Plaintiff understood Mangual's bid to provide ten employees less than Xpert's bid, making Mangual's bid less cost-efficient.   On October 15, 1997, Sulsona terminated Pérez as President of the Bids Board.   The Supreme Court of Puerto Rico later

CIVIL NO. 98-2312 (JP)                 3

determined that the Ports Authority's bidding process regarding the LMM International Airport's janitorial services contract was null and void, thereby invalidating both the actions of the Board and of Sulsona.

On November 19, 1997, an article by Pablo Trinidad was published in El Nuevo Día, a Puerto Rico newspaper, discussing the adjudication of the maintenance contract for the LMM International Airport. The article, entitled "'Washing' of Contracts in Ports Authority,"[1] reports that the Ports Authority revoked the contract awarded to Xpert's in favor of Mangual's. The article cites co-defendant Segismundo Quiñones ("Quiñones") as stating that the revocation was due to the fact that the Bids Board exceeded its authority in awarding the contract to Xpert's. Pérez, on the other hand, is quoted as saying that the Bids Board awarded the maintenance contract to Xpert's because Xpert's bid was more cost-efficient due to the greater number of employees it would have on the job at a lower average hourly rate. Additionally, the article cites Pérez as stating that Mangual's also had not fulfilled the requirement of posting a bond. Pérez's version of the circumstances surrounding the adjudication of the maintenance contract was incompatible with the Ports Authority's official version. On the following day, November

---

[1]Translation ours. The article's original Spanish title is "'Limpieza' de contratos en Puertos."

CIVIL NO. 98-2312 (JP)                    4

20, 1997, Sulsona ordered the termination of Pérez as his Assistant and her reinstatement to the career position of Deputy Chief for Contracts, Real Estate, Insurance, and Claims.

On April 30, 1998, Sulsona resigned as Executive Director of the Ports Authority.  On May 1, 1998, co-Defendant Rivera was appointed as Executive Director of the Authority.    After his appointment, Pérez informed Rivera that she had been sidelined and was performing no duties in her career position.  Rivera told her he would investigate the matter.  On May 28, 1998, Pérez wrote a letter to Rivera requesting that the situation be corrected.

One year later, on May 28, 1999, Pérez was ordered to take her accumulated vacation leave until November 2, 1999.  Effective May 24, 1999, Pérez's salary was reduced from $44,976.00 annually to $38,640.00.  Pérez's current job description indicates that she is to be supervising a certain number of employees.

III. **SUMMARY JUDGMENT STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993); Lipsett v. University of Puerto Rico, 864

CIVIL NO. 98-2312 (JP)                    5

F.2d 881, 894 (1st Cir. 1988).  Summary judgment is appropriate
where, after drawing all reasonable inferences in favor of the non-
moving party, there is no genuine issue of material fact for trial.
See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A
fact is material if, based on the substantive law at issue, it might
affect the outcome of the case.  Id. at 248; Mack v. Great Atl. &
Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989).  A material
issue is "genuine" if there is sufficient evidence to permit a
reasonable trier of fact to resolve the issue in the non-moving
party's favor.  See Anderson, 477 U.S. at 248; Boston Athletic Ass'n
v. Sullivan, 867 F.2d 22, 24 (1st Cir. 1983).

      The party filing a motion for summary judgment bears the initial
burden of proof to show "that there is an absence of evidence to
support the non-moving party's case."  Celotex Corp v. Catrett, 477
U.S. 317, 325 (1986).  The burden then shifts to the non-movant to
show that "sufficient evidence supporting the claimed factual dispute
[exists] to require a jury or judge to resolve the parties' differing
versions of truth at trial."  See First Nat'l Bank of Ariz. v. Cities
Serv. Co., 391 U.S. 253, 288-89, 88 S. Ct. 1575, 1592-93, 20 L.Ed.2d
569 (1968).  The party opposing summary judgment may not rest upon
mere allegations or denials of the pleadings, but must affirmatively
show, through filing of supporting affidavits or otherwise, that
there is a genuine issue for trial.  See id.; Goldman v. First Nat'l

CIVIL NO. 98-2312 (JP)              6

<u>Bank of Boston</u>, 985 F.2d 1113, 1116 (1st Cir. 1992).  On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion.  <u>See</u> <u>Anderson</u>, 477 U.S. at 256-57, 106 S. Ct. at 1514-15.

**IV.  SECTION 1983**

Section 1983 provides for injunctive relief and the recovery of damages against individuals and governmental entities that deprive a plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States.[2]  The U.S. Supreme Court has "repeatedly held that the coverage of section 1983 must be broadly construed." <u>Dennis v. Higgins</u>, 498 U.S. 439, 443, 111 S. Ct. 865, 868, 112 L.Ed.2d 969 (1991) (quoting <u>Golden State Transit Corp. v. Los Angeles</u>, 493 U.S. 103, 105, 110 S. Ct. 444, 448, 107 L.Ed.2d 420 (1989)).  A broad construction is consistent with the legislative history of section 1983, which was enacted as a remedial measure. <u>See id.</u> (citing <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 684, 98 S. Ct. 2018, 2032, 56 L.Ed.2d 611 (1978)).

---

[2]42 U.S.C. § 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to any deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

CIVIL NO. 98-2312 (JP)                7

In order to establish a prima facie cause of action under section 1983, Pérez must prove that Defendants' conduct deprived her of a constitutional right. See Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 1912, 68 L.Ed.2d 420 (1981) (overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L.Ed.2d 662 (1986)). An analysis of this issue requires the Court to consider both whether a substantive constitutional violation occurred, and whether Defendants' conduct was the cause in fact of Pérez's constitutional deprivation.

## A.    First Amendment Deprivation

Pérez alleges violation of her right to free expression under the First Amendment to the United States Constitution. She claims that Defendants retaliated against her in her public employment because she spoke to the press about the adjudication of the LMM International Airport maintenance contract. Pérez does not allege a First Amendment violation for her termination from the trust position of Assistant to the Executive Coordinator in Public Relations and Patrons Affairs; rather, she alleges that in her career position as Deputy Chief for Contracts, Real Estate, Insurance, and Claims, Defendants have altered the terms and conditions of her employment by relegating her to a position devoid of substantive

CIVIL NO. 98-2312 (JP)                8

duties or duties substantially reduced in scope.[3] Defendants, on the other hand, contend that no retaliation was taken against Pérez in her career position.  Defendants go on to argue that even assuming Pérez's duties were narrowed to preclude her from working on policy-implementation tasks, it is uncontested that this measure was reasonable considering her lack of loyalty to the office, as evidenced by her statements to El Nuevo Día in conjunction with the adjudication of the LMM International Airport janitorial services contract.

Viewing the evidence in the light most favorable to Pérez, the Court finds evidence of an alteration of the terms and conditions of her employment in the career position sufficient to defeat Defendants' motion for summary judgment on that basis.  According to the deposition testimony of Pérez's present supervisor, José López Snow ("López"), co-Defendant Quiñones told López that Pérez's duties in her career position were to be circumscribed.  (Plf's Exh. E, p. 30).  In fact, although Defendants deny any changes in the terms of Pérez's employment, it cites as an uncontested fact the deposition testimony of López, in which he states that co-Defendant Quiñones instructed him not to assign Pérez any work dealing with Ports

---

[3]Defendants dedicate a substantial portion of their brief to refuting the theory that Plaintiff's discharge from her trust position violated her First Amendment rights.  Because Pérez indicated in her Opposition that she is no longer pursuing that claim, the Court will not address these arguments.

CIVIL NO. 98-2312 (JP)                9

Authority contracts and/or legal complaints. (Dft's Exh. 18, p. 33).
In light of this evidence, the Court cannot conclude that it is
uncontested that Pérez suffered no retaliation.  This is not,
however, the end of the analysis.  Because the U.S. Constitution
permits such retaliation under certain circumstances, the Court must
determine whether such circumstances are present here.

The State may not retaliate against a public employee on a basis
that infringes on the employee's constitutionally protected right to
freedom of speech.  Rankin v. McPherson, 483 U.S. 378, 383, 107 S.
Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); Perry v. Sindermann, 408 U.S.
593, 597, 92 S. Ct. 2694, 2697-98, 33 L.Ed.2d 570 (1972).  This
constitutional principle, however, is not absolute.  Application of
the principle requires a balancing of interests, between those of the
employee in exercising freedom of speech in commenting upon matters
of public concern and those of the public employer concerned with the
efficient function of its governmental operations.  Rankin, 483 U.S.
at 384, 107 S. Ct. at 2896-97; Connick, 461 U.S. at 140, 103 S. Ct.
at 1686; Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.
Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968).  The U.S. Supreme Court has
observed that "[t]his balancing is necessary in order to accommodate
the dual role of the public employer as a provider of public services
and as a government entity operating under the constraints of the
First Amendment." Rankin, 483 U.S. at 384, 107 S. Ct. at 2897.  The

CIVIL NO. 98-2312 (JP)          10

Supreme Court further has cautioned that "[v]igilance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of the employees' speech." Id.

In assessing a claim of retaliation in public employment for engaging in protected speech, the Court must make a threshold inquiry into whether the Plaintiff was speaking on a matter of public concern. See id., 483 U.S. at 384, 107 S. Ct. at 2897; Connick, 461 U.S. at 146, 103 S. Ct. at 1696. This is a question of law for the Court to decide. See McCann v. Ruiz, 788 F. Supp. 109, 116 & n. 4 (D. Puerto Rico 1992) (Pieras, J.) (citing Hall v. Ford, 856 F.2d 255, 258 (D.C. Cir. 1988)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48, 103 S. Ct. at 1690. Examining the record before this Court, Pérez's statements plainly addressed a matter of public concern. The statements concerned the allocation of more than $3.5 million of public funds for janitorial services at Puerto Rico's largest airport. The statements were factual in nature, seeking to explain to the public the course of action taken by the Bids Board in adjudicating the contract in favor of a company whose bid was not the lowest monetary bid. Further, Pérez's speech

CIVIL NO. 98-2312 (JP)                    11

was inconsistent with the Ports Authority's official version of what had transpired in the bidding process.  To the extent the goal of the speech was to bring the truth to light, or to expose possible wrongdoing or abuse of office, the statements clearly implicate the public interest.  The Courts have observed that public employee speech on official malfeasance or abuse of office is of inherent concern to the public.  See O'Connor v. Steeves, 994 F.2d 905, 913-14 (1st Cir. 1993); see also Koch v. City of Hutchinson, 847 F.2d 1436, 1446 & n.17 (10th Cir.) (en banc), cert. denied, 488 U.S. 909, 109 S. Ct. 262, 102 L.Ed.2d 250 (1988).

The second level of inquiry, also a question of law, involves a balancing of the interests served by the public employee's speech against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Rankin, 483 U.S. at 388, 107 S. Ct. at 2899 (quoting Pickering, 391 U.S. at 568, 88 S. Ct. at 1734-35).  In favor of the public employee, the Court must weigh the First Amendment values served by the particular speech in light of both its content and context.  See id. (citing Connick, 461 U.S. at 152-53, 103 S. Ct. at 1692-93).  In so doing, the Court takes into account employee's interest in communicating, as well as the community's interest in receiving, information on matters of public concern.  See O'Connor, 994 F.2d at 915.  Among those considerations identified by the U.S. Supreme Court

CIVIL NO. 98-2312 (JP)            12

in weighing the government's interest are "whether the statement
impairs discipline by superiors or harmony among co-workers, has a
detrimental impact on close working relationships for which personal
loyalty and confidence are necessary, or impedes the performance of
the speaker's duties or interferes with the regular operation of the
enterprise." Rankin, 483 U.S. at 388, 107 S. Ct. at 2899 (citing
Pickering, 391 U.S. at 570-73, 88 S. Ct. at 1735-37).

The public employer bears the burden of justifying an adverse
employment action taken in response to a public employee's speech.
See Connick, 461 U.S. at 149-50, 103 S. Ct. at 1691-92. The burden,
however, is in the nature of a sliding scale – the greater the
employee's interest in the protected speech, the heavier the burden
to overcome. See id. For reasons described below, the Court finds
that Defendants failed to carry their burden of demonstrating a state
interest that outweighs Pérez's First Amendment interests.

Defendants rely heavily on Flynn v. City of Boston, 140 F.3d 42
(1st Cir. 1998) for the proposition that a public employer may
discharge a policy-level employee for protected speech if that
employee is subject to political discharge under Elrod and Branti.
(Cites). Defendants argue that even in her career position, Pérez
is a policy-level official, and thus Defendants may consider her
substantive views on agency matters in deciding whether to retain her
in her career position. See Flynn, 140 F.3d at 47.

CIVIL NO. 98-2312 (JP)          13

The problem with this argument is two-fold.  First, Pérez has produced evidence refuting Defendants' contention that her career position involves policymaking.  (Plf's Exh. L).  The nature of Pérez's position is therefore a contested issue.  Second, regardless of whether Pérez could be considered a policy-level official, there is simply no evidence in the record to suggest that Pérez political affiliation or political views differ from those of the Ports Authority.  Pérez's comments to the press did not reflect her substantive views on agency matters; rather, they were of a procedural nature, in that they sought to explain to the public the bid adjudication procedure and the factors considered in adjudicating the bids.  It could be argued, however, that Pérez's belief in transparency of the contracts adjudication procedure is inconsistent with the Ports Authority's, and that this discordant belief undermines the effective functioning of the agency.  Although the Court gives some weight to this concern, it does not find that such a belief bears directly on substantive agency matters within the meaning of Flynn.  Moreover, the Court notes that Pérez's comments to the press were in her capacity as President of the Bids Board; there is no evidence to impugn Pérez's loyalty to the agency in carrying out her duties in the career position.  Thus, viewing the evidence in the light most favorable to Pérez, as the Court must at this juncture, the Court finds that Pérez's First Amendment interests

CIVIL NO. 98-2312 (JP)             14

outweigh the interests of Defendants. Accordingly, summary dismissal
is inappropriate on this basis.

   **B.   Causation**

   Section 1983 imposes liability only upon those individuals and
entities whose conduct is a cause in fact of the alleged
constitutional deprivation. See Parratt, 451 U.S. at 535, 101 S. Ct.
at 1912; Maldonado Santiago v. Velázquez García, 821 F.2d 822, 831
(1st Cir. 1987). Causation under section 1983 may be grounded on
"both action that deprives a plaintiff of a constitutional right and
for failure to act, when there is a duty to act, to prevent such a
deprivation." Clark v. Taylor, 710 F.2d 4, 9 (1st Cir. 1983).
Section 1983 contains no state-of-mind requirement independent of
that necessary to state a violation of the underlying constitutional
right. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct.
662, 664, 88 L.Ed.2d 662 (1986). Thus, in bringing a section 1983
suit, the plaintiff must prove a violation of the underlying
constitutional right and, depending on the right, merely negligent
conduct may not be enough to state a claim. See id. at 330, 106 S.
Ct. at 664 (more than mere negligence required to establish
Fourteenth Amendment due process claim); Wilson v. Seiter, 501 U.S.
294, 303, 111 S. Ct. 2321, 2327, 115 L.Ed.2d 271 (1991) (must show
"deliberate indifference" to prisoner's conditions of confinement or

CIVIL NO. 98-2312 (JP)                    15

failure to respond to his medical needs to constitute cruel and unusual punishment under Eighth Amendment).

Defendants argue that Pérez must demonstrate that Defendants acted with "reckless indifference" to her First Amendment rights. This is not the correct standard under the First Amendment. In <u>Mount Healthy School Dist. Board of Educ. v. Doyle</u>, 429 U.S. 274, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977), the U.S. Supreme Court was called upon to articulate the causation test for a First Amendment deprivation in the public employment context. The Court held that the plaintiff bears the initial burden of showing that the exercise of her First Amendment rights was a "motivating factor" in the defendant-public employer's adverse employment decision. <u>See</u> <u>Mount Healthy</u>, 429 U.S. at 287, 97 S. Ct. at 576. The burden then shifts to the defendant to show, by a preponderance of the evidence, that it would have reached the same employment decision even absent the protected speech. <u>See</u> <u>id.</u>

The First Circuit has remarked that the First Amendment causation analysis is "intensely fact-oriented." <u>McDonough v. Trustees of the University Systems of New Hampshire</u>, 704 F.2d 780, 784 (1st Cir. 1983). Dismissal on a motion for summary judgment for failure to show causation in this context is therefore rare, particularly where the plaintiff relies on broad array of circumstantial evidence to raise an inference of improper motivation,

CIVIL NO. 98-2312 (JP)                16

and where the jury's judgments about credibility will play an important role in the fact-finding process. See McCann, 788 F. Supp. at 117 (citing Lipsett v. University of Puerto Rico, 864 F.2d 881, 895 (1st Cir. 1988)).

Here, Pérez has brought forth sufficient circumstantial evidence to create a genuine issue of material fact as to whether her protected speech activities were a "motivating factor" in Defendants' decision, as alleged by Pérez, in altering the terms and conditions of her employment by giving her no duties to perform and/or taking away certain core duties from her. Pérez has produced evidence that she was assigned no duties and deprived of office equipment for at least six months after her reinstatement to her career position, and that thereafter she was assigned a narrow range of duties. (Plf's Exh. A, E, F, I). The fact that these measures were taken in the wake of her statements to the press constitutes circumstantial evidence of retaliation. Defendants' request for summary judgment on these grounds is therefore **DENIED**.

## C.   **Supervisory Liability**

Defendants' final argument is that summary judgment is appropriate because it is undisputed that Pérez has not produced evidence of "gross negligence or deliberate indifference" on the part of co-Defendant Rivera. See Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209 (1st Cir. 1989). The Court does not, however, understand

CIVIL NO. 98-2312 (JP)          17

Pérez to allege supervisory liability against co-Defendant Rivera. Rather, co-Defendant Rivera is being sued for his own failure to act to correct an alleged constitutional deprivation.  Pérez has brought forth evidence showing that Rivera was made personally aware of her lack of duties, and that Rivera assigned resolution of the matter to co-Defendant Quiñones even though Pérez informed Rivera that the same Quiñones had given the orders to deprive Pérez of her duties.  Thus, summary judgment in favor of co-Defendant Rivera is hereby **DENIED**.

V.    **CONCLUSION**

   For the foregoing reasons, the Court hereby **DENIES** Defendants' motion for summary judgment.

   **IT IS SO ORDERED.**

   In San Juan, Puerto Rico, this 3rd day of March, 2000.

                        JAIME PIERAS, JR.
                   U.S. SENIOR DISTRICT JUDGE

AO 72A
(Rev.8/82)